**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| In re | Case No. 08-80083-DHW |
| | Chapter 7 |
| DAVID A. HINES, | |
| Debtor. | |

---

| | |
|---|---|
| ANTHONY J. MARCHETTI and WEST GEORGIA EMERGENCY MEDICINE, LLC, | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 08-08021-DHW |
| DAVID A. HINES, | |
| Defendant. | |

### MEMORANDUM OPINION

The plaintiffs filed this adversary proceeding under 11 U.S.C. §§ 523 and 727 to determine the dischargeability of a debt and to object to the discharge of the debtor. The plaintiffs filed a motion for summary judgment (Doc. #21) with respect to the first four counts of the complaint. The first four counts seek to deny the debtor a discharge under §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), and 727(a)(4).

The debtor objected to the motion (Doc. #30), and the motion came on for hearing on June 1, 2009. Upon consideration of the motion, the debtor's response, briefs and oral arguments of counsel, and the verified materials of record, the court concludes that the plaintiffs are entitled to judgment as a matter of law on three of the counts.

## Jurisdiction

This court derives jurisdiction in this adversary proceeding from 28 U.S.C. § 1334 and from an order of the United States District Court for this district conferring jurisdiction in title 11 matters to the Bankruptcy Court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further, because this adversary proceeding is one to determine the dischargeability of a particular debt and to deny the debtor a discharge in general, this is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and(J) thereby extending this court's jurisdiction to the entry of a final order or judgment.

## Marchetti's Version of Relevant Facts

The plaintiff, Anthony J. Marchetti ("Marchetti"), and the defendant, David A. Hines ("Hines"), are both medical doctors and practiced medicine together as members of West Georgia Emergency Medicine, LLC ("WGEM"). In December 2005, Marchetti brought suit against Hines in the Superior Court of Troup County, Georgia alleging that Hines had misappropriated WGEM's funds and had wrongfully refused Marchetti access to WGEM's books and records. The lawsuit was referred to arbitration, and on November 26, 2007, the arbitrator awarded Marchetti and WGEM just over $667,000 in damages and attorney fees. On December 21, 2007, the arbitrator's award was confirmed by a judgment of the Georgia state court. On January 28, 2008, Hines filed the underlying bankruptcy petition for relief in this court.

In addition to Hines's interest in WGEM, he had interests in two other entities which are at issue here. On or about January 31, 2000, Hines formed David A. Hines, MD, PC. ("Hines PC"). Under its articles, the corporation's purpose was to provide physician coverage as an independent contractor to emergency departments and urgent care facilities in Alabama and Georgia. Hines owned a 100% interest in Hines PC, and he and his wife, Irma J. Hines, served as directors. According to Hines, payments for his services as a physician were the sole source of income for the PC.

Hines also had an interest in David A. Hines, MD, LLC ("Hines LLC"). On or about October 30, 2007, about two weeks before the Troup County, Georgia litigation was scheduled for arbitration, Hines and his wife formed

Hines LLC. Mrs. Hines owns a 75% interest in Hines LLC and Hines owns the other 25% interest.

On December 1, 2007, five days after the arbitrator's award, Hines authorized the dissolution of Hines PC. The articles of dissolution were received by the Alabama Secretary of State on January 24, 2008, just four days before Hines filed his bankruptcy petition in this court.

**Asset Transfers**

From Hines PC to Hines LLC:

Hines testified at the 341 meeting that "we changed the PC to an LLC" in November 2007 "due to litigation matters" and that all of Hines PC's assets, consisting of office supplies, two vehicles, and at least $32,000, were transferred to Hines LLC at that time.

As earlier noted, Mrs. Hines owned no interest in Hines PC. However, as 75% owner of Hines LLC, she benefitted, albeit indirectly, from the transfer of assets from Hines PC to Hines LLC. Hines stated that his wife made no capital contribution to Hines LLC. Hines testified at the 341 meeting that the only source of income for Hines LLC (as well as Hines PC) was income from his contract services as an emergency room physician.

To Accounts Owned or Controlled by Mrs. Hines

Mrs. Hines opened an account at Regions Bank solely in her name on September 21, 2007. According to Hines, they "consolidated everything" due to pending litigation. He felt that Marchetti was "illegally" attempting to obtain bank records during the discovery process of the litigation. The debtor and Mrs. Hines "began the process of closing accounts" in September 2007 – well before the arbitration decision in November 2007. Hines had no bank accounts by the time he filed the chapter 7 petition.

Checks dated September 28, 2007 and November 1, 2007, each in the amount of $10,000, were drawn on the Hines PC account and made payable to Hines. Both checks were deposited into the account at Regions Bank belonging

3

to his wife. Neither of these transfers were disclosed by Hines in his original bankruptcy petition and schedules.

Similarly, two checks totaling $3,000 were paid to Hines from Mrs. Hines's account at Capital City Bank. Those checks were deposited into Mrs. Hines's account at Regions Bank. Neither of these transfers were disclosed by Hines in his original bankruptcy petition and schedules.

In addition to these checks, Hines deposited other checks, payable to him, into his wife's Regions Bank account. These include a $14,000 check dated December 3, 3007, a $140.36 check dated December 13, 2007, a $202.32 check dated December 10, 2007, a $750 check dated December 20, 2007, a $5,258.50 check dated December 31, 2007 and a $5,258.00 check deposited just 3 days after the filing of the petition which related to the "period ending 1-31-2008."

Finally, within the one-year period preceding the bankruptcy petition, Hines and his wife transferred $20,000 from their joint accounts at Capital City Bank to an account at the same bank held solely by Mrs. Hines. There were only three instances where the deposits into these joint accounts came from funds payable to Mrs. Hines, and those deposits totaled less than $2,000.

None of these transfers, in all totaling over $68,000, were disclosed by Hines in his original bankruptcy petition and schedules. The Capital City joint accounts were closed on November 27, 2007, the day after the arbitrator's award.

From Hines to Hines LLC:

Hines testified at the 341 meeting that the two vehicles transferred from Hines PC to Hines LLC were a 2002 Ford Excursion and a 2005 Lincoln Navigator. He further testified that, as of the date of bankruptcy, he owned only one vehicle, a 2003 Ford F-250 truck. However, the records of the Alabama Department of Revenue show that the 2002 Excursion and the 2005 Navigator belonged to Hines individually. In November 2007, the day after the arbitrator's award, Hines filled out the applications to transfer title to these two vehicles. However, the applications were not submitted to the State of Alabama until January 23, 2008, mere days before Hines's bankruptcy. Hines did not disclose

4

these transfers in the schedules.

The applications reflect that Hines individually is the "seller" and not Hines PC. Hines signed the applications on January 23, 2008. A signature on the application constitutes a certification, under penalty of a felony for a false statement, that the vehicle is owned by the person signing the application. At the 341 meeting, Hines denied selling any property during the year preceding bankruptcy.

Hines further testified that the two vehicles were paid for by Hines PC. However, nearly $11,000 in payments on the Navigator came from bank accounts held jointly by the debtor and Mrs. Hines or from accounts owned solely by Mrs. Hines.

Post Petition Transfers:

Repeatedly, Hines testified at the 341 meeting that none of his personal property had been removed from his home after the bankruptcy case was filed. Hines acknowledged, however, that a home generator, which was originally purchased for $27,000, had been sold by Mrs. Hines. Nevertheless, Hines testified that the generator belonged to Mrs. Hines, having been purchased by her using her separate funds. In particular, Hines testified that payments on the generator were made using Mrs. Hines's personal American Express account over which he had no interest or control. Further, Hines testified that the payments were made from funds constituting Mrs. Hines's household income and that she had not completed the payments when the generator was sold.

Contrary to Hines testimony, records reflect that the generator was purchased using an American Express credit card which was in the name of both Mrs. Hines and Hines PC and that both the debtor and Mrs. Hines are cardholders. Further, the records reflect that the generator portion of the American Express account was paid in full in October 2005 and that it was paid from the funds of both the debtor and Mrs. Hines from their joint account at Capital City Bank. Almost all of the funds on deposit in that account were attributable to the debtor's, and not his wife's, earnings.

Finally, Hines furnished Marchetti's attorneys copies of a credit card

statement that dealt with the generator purchase and payment transactions. The document had been heavily redacted, and the name of one of the account debtors had been obliterated. It was not until Marchetti obtained duplicates of the same record from the credit card company that it discovered that the account belonged not to Mrs. Hines, but to Mrs. Hines and Hines PC.

### Other Relevant Facts Asserted by Marchetti

- Hines had an executory contract with Alabama Emergency Room Administrative Services, Inc. ("AERAS"). The contract was with Hines individually and not Hines PC. Hines PC never had a contractual right to payment for the debtor's emergency room physician services. Hines failed to disclose his executory contract with AERAS. In addition, funds received under the AERAS contract were deposited by AERAS's affiliate, ERMed, LLC, into the account of Hines PC and later into the account of Hines LLC, and those transfers were not disclosed in the original bankruptcy papers. After filing bankruptcy, Hines LLC entered into a nearly identical independent contractor agreement with ErMed, LLC that superseded the AERAS contract.

- During the one-year period prior to Hines's bankruptcy, Hines PC received electronic deposits of more than $292,000 based solely on the work Hines performed under the AERAS contract. In his bankruptcy schedules, however, Hines listed his income from employment or business operations at just over $40,000 (wages from Hines PC and Hines LLC). He disclosed no other income except for disability benefits and withdrawals from this individual retirement account.

- Hines did not disclose other transfers from Hines PC to himself during the one-year period preceding the bankruptcy. Hines received from Hines PC $97,004 constituting "reimbursements," "distributions," and "personal loan payments." "Petty cash" withdrawals during that period totaled $6,000. In addition, $4,731 was withdrawn when the Hines PC bank account was closed on November 27, 2007.

- When Hines and his wife formed Hines LLC on October 30, 2007, they opened an account at Regions Bank in the name of Hines LLC. Both

6

Hines and his wife were signatories on the account. It was into that account that the funds from Hines PC were transferred. The day after the arbitrator's award was made in the state court action involving Marchetti, Hines's name was removed as signatory on the account.

## Summary of Activity Near Arbitration

On September 21, 2007, Mrs. Hines opened an account at Regions Bank solely in her name. From that time until the petition was filed on January 28, 2008, numerous checks payable to Hines were deposited into this account. In addition, transfers to this account were made from accounts held jointly with his wife or the Hines PC account.

On October 30, 2007, about two weeks before scheduled arbitration of the state court litigation, Hines formed Hines LLC with his wife and opened a bank account for the LLC at Regions. He then transferred the assets of Hines PC to Hines LLC.

The day after the arbitrator's award, Hines closed joint bank accounts with his wife at Capital City Bank. He also closed the Hines PC bank account and removed his name from the Hines LLC bank account. He began filling out the applications to transfer the two vehicles from himself individually to Hines LLC. Five days later he authorized the dissolution of Hines PC.

## Hines's Version of Facts

In July 2007, the decision was made to dissolve Hines PC. That decision was made due to ongoing problems with Dr. Marchetti and mounting unpaid income due to Hines PC. While the PC was not actually dissolved until January 2008, the decision to do so was made well in advance of the arbitration of Marchetti's claims.

The dissolution of Hines PC and the creation of Hines LLC were not done with nefarious intent. Rather, these actions were undertaken due to the overall finances of Hines PC. The creation of Hines LLC was not an attempt to hide assets or income.

7

With regard to Mrs. Hines's 75% interest in Hines LLC, Hines clarified his earlier statement that she made no capital contribution to the LLC. Mrs. Hines did make a capital contribution of $750. In addition, Mrs. Hines generated income for the PC via a professional services agreement with WGEM. She performed numerous administrative and management functions. She was in the process of negotiating similar contracts for Hines LLC when health problems prevented her from doing so. WGEM still owes the PC and LLC a significant amount of money for her services.

Countering Marchetti's contention that the debtor under-reported his income and made improper transfers of his income to Hines PC and LLC, Hines avers that his income came through the PC and the LLC – not directly from AERAS or ERMed. The contracts with AERAS and ERMed were not with Hines individually, and he denies ever receiving direct payments from them. Hines asserts that the income in the bankruptcy schedules mirrors that reflected on his tax returns.

With regard to other monies paid to Hines which were allegedly not disclosed as income, Hines contends that he disclosed all "personal loan repayments" in the amended schedules and that the "petty cash" withdrawals were used to defray PC operating expenses. He further contends that the two $10,000 checks paid to him in late September and early November 2007 from Hines PC that were deposited into his wife's account were included in the income reported in the bankruptcy schedules. He denies any wrongdoing from checks deposited into her account because "all such monies that could be construed as income . . . were believed to have been accounted for as such."

Further, Hines was paid $3,000 from Mrs. Hines's account at Capital City Bank in two separate checks drawn in the Fall of 2007. Hines contends that these funds were intended to be a loan to Hines and were used to pay legal fees.

Concerning the transfers of funds from the Capital City Bank joint accounts to an account at the same bank belonging solely to Mrs. Hines, Hines contends that these transfers were for repayment of loans, reimbursement of household expenses, reimbursement for legal expenses paid on his behalf, and one transfer was a birthday gift to her. Further, Hines maintains that at least $7,652 of the funds in the joint account at Capital City Bank were attributable

8

to Mrs. Hines.

Hines denies making any prepetition transfers to his wife requiring disclosure. The only events that might be construed as a "transfer" were the reimbursements to her for personal bills and legal expenses paid directly from her account.

With regard to the transfer of the two vehicles prepetition, Hines maintains that since December 2004, he has personally owned only one vehicle, a 2003 Ford truck. The 2002 Ford Excursion was purchased by Hines PC in May 2002, and all payments on the Excursion were made by Hines PC. Hines contends that there was a mistake in the title of the Excursion, where the initials PC were mistakenly omitted. The PC treated the vehicle as an asset of the corporation.

Similarly, Hines contends that Hines PC purchased the 2005 Lincoln Navigator in December 2004 and made most of the payments. A minority of payments made from personal accounts were treated as corporate loans. At the time that Hines PC transferred the Navigator to Hines LLC in January 2008, money remained owing on the vehicle.

Finally, with regard to the alleged post-petition transfer of a home generator, Hines continues to deny any ownership interest in the generator. Further, he contends that the generator was purchased on Mrs. Hines's personal American Express account. After purchasing the generator, it was discovered that it did not function properly. Mrs. Hines disputed the charge, and it was removed from her account until the generator was replaced, which took several months. When American Express reinstated the charge, the charge was inadvertently placed on the wrong account. This was corrected after the lapse of several months. Hines denies that he intentionally falsified the American Express statement, produced in discovery, by obliterating the name of the account holder. Rather, the name of one of the account holders was obliterated in order to protect personal information of Mrs. Hines.

**Contentions of the Parties**

Marchetti contends that Hines's pre- and post- bankruptcy transfers of

9

property, some of which were not disclosed in his bankruptcy schedules, should lead to the denial of a discharge in this case. Hines's intent to hinder, delay or defraud a creditor through these transfers, according to Marchetti, may be circumstantially inferred through the cumulative facts of this case.

Further, Marchetti contends that Hines's falsification of recorded information by obliterating the name of the account holder for the credit card used in the generator purchase transaction should lead to the denial of his discharge. Marchetti also contends that Hines knowingly made numerous false oaths in this case, which should result in the denial of his discharge.

Hines, on the other hand, contends that neither the transfers before or after the petition are sufficient to support a finding that he had the intent to hinder, delay or defraud a creditor. Hines acknowledges that the name of the account holder was obliterated from the copies supplied to Marchetti's counsel, but denies that the obliteration was done with a motive to deceive through falsification of the document. Hines contends that inaccurate testimony given in this case concerning a number of different subjects was done mistakenly but without knowing and fraudulent intent.

## Conclusions of Law

The standard for summary judgment established by Fed. R. Civ. Proc. 56 is made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. Proc. 7056. The rule provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Proc. 56(c).

Summary judgment is appropriate when "there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). In deciding a motion for summary judgment, the

10

Case 08-08021    Doc 36    Filed 09/25/09    Entered 09/25/09 11:03:44    Desc Main
Document      Page 10 of 19

court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 47 U.S. at 322. In the case at bar, the plaintiffs have the burden of proving all facts necessary to support a claim under 11 U.S.C. § 727 by a preponderance of the evidence. *See Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 289-91 (1991)).

The non-moving party cannot rest on mere allegations in response:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.

Fed. R. Civ. Proc. 56(e), as incorporated by Fed. R. Bankr. Proc. 7056. "[A]ll inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party." *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). However, "when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible,'" those inferences will not preclude summary judgment. *Id.* at 743. And "[w]here the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests." *Id.*

The purpose of a discharge under chapter 7 is to provide a fresh start to honest debtors unhampered by preexisting debt. Courts generally construe the exceptions to discharge liberally in favor of the debtor. *Guerra v. Fernandez-*

11

*Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006).

### Section 727(a)(2)(A) and (B)

Marchetti moves for summary judgment under the first four counts of the complaint. Counts 1 and 2 are predicated on §§ 727(a)(2)(A) and (B). 11 U.S.C. § 727(a) provides a number of grounds for denying a discharge to a debtor. Under section 727(a)(2), a debtor may be denied a discharge if:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

"Since it is unlikely that a debtor will admit that he intended to hinder, delay, or defraud his creditors, the debtor's intent may be established by circumstantial evidence or inferred from the debtor's course of conduct." *Jennings*, 533 F.3d at 1339. "Courts have identified several indicia of fraud that tend to show that a debtor had an actual intent to defraud his creditors." *Protos v. Silver (In re Protos)*, 322 Fed. Appx. 930, 2009 WL 977314, *5 (11th Cir. April 13, 2009). They include:

> (1) the lack or inadequacy of consideration for the property received;
> (2) the nature of the relationship between the transferor and the transferee;
> (3) whether the transferor retains possession, control, benefits, or use of the property in question;
> (4) whether the transfer resulted in insolvency;
> (5) the cumulative effect of the debtor's transactions and course of

12

conduct after the onset of financial difficulties or threat of suit by creditors; and

(6) the general chronology and timing of the transfer in question.

*Id.*

## Prepetition Transfers

It is undisputed that Hines made numerous transfers of property within the one-year period preceding the bankruptcy filing. The only issue is whether Hines made the transfers with intent to hinder, delay, or defraud his creditors. Marchetti has provided evidence of three categories of transfers: (1) transfers from Hines PC to Hines LLC; (2) transfers to accounts owned by Mrs. Hines; and (3) transfers of the two vehicles from Hines to Hines LLC.

The transfers were admittedly made with at least the intent to hinder or delay Marchetti's attempts to pursue the litigation to a judgment. Hines stated that he converted the PC into an LLC "due to litigation matters" as well as "mounting overdue amounts due the PC." Hines also admits that he "consolidated" his bank accounts with his wife because of the Marchetti litigation. He felt that Marchetti was illegally attempting to obtain bank records in the discovery process. Therefore, the pending litigation with Marchetti was a primary motivation for the transfers made by Hines.

The transfers from Hines PC to Hines LLC resulted in a transfer of 75% of his interest in Hines PC to his wife. The property transferred consisted of office equipment and at least $32,000 cash. The fact that the initial decision to convert the PC into an LLC was made in July 2007 instead of November 2007 is without consequence. The litigation with Marchetti began in 2005 – long before either of those dates. In addition, the transfer of his interest was for the benefit of an insider (his wife), and the PC received no consideration. His wife did make a nominal $750 capital contribution to the LLC. Hines retained the use of the property after the transfer.

Marchetti has identified over $68,000 transferred to accounts owned solely by Mrs. Hines. Of this amount, over $48,000 in checks payable to Hines were deposited into a Regions account owned solely by Mrs. Hines. The

13

remaining $20,000 was transferred from the Hines's joint Capital City Bank accounts to a Capital City account owned solely by Mrs. Hines. None of these transfers were disclosed in the original schedules.

In defense of these transfers, Hines states that "all such monies that could be construed as income" to Hines "were believed to have been accounted for as such." Hines Affidavit, ¶ 14. His response misses the point. If the checks were income to him, then depositing the checks into an account belonging solely to his wife constituted a transfer. Hines further states that a portion of the funds transferred constituted reimbursements to his wife for household and legal expenses as well as repayment of loans. He admits that the reimbursements "might be construed as a 'transfer.'" Hines Affidavit, ¶ 18. Hines itemizes the checks that fall into this category. However, he provided no evidence that his wife paid these bills initially. Further, he offers no explanation for the transfer to his wife of over $40,000 in checks payable to him but deposited into his wife's Regions account.

Mrs. Hines opened the Regions account on September 21, 2007, less than two months before the scheduled arbitration. Numerous checks and transfers were made into this account before the petition was filed in January 2008. Even before September 2007, transfers were made to his wife's account with Capital City Bank. The day after the arbitrator's award in November 2007, Hines closed the joint bank accounts with his wife at Capital City Bank. He also closed the Hines PC bank account and removed his name from the Hines LLC bank account. By the time he filed the chapter 7 petition on January 2008, he had no checking or savings account in his name.

Marchetti also points to the transfer of two vehicles to the LLC that were titled in the name of Hines individually – the 2002 Ford Excursion and the 2005 Lincoln Navigator. Hines filled out and submitted the applications to transfer the title of the vehicles to the LLC. He signed the applications, under penalty of a felony, certifying that he was the owner of the vehicles.

Hines, however, denies that he owned the vehicles and insists that Hines PC owned the vehicles. However, the certificates of title were registered in his name individually. And contrary to his testimony that the PC made the payments on the vehicles, at least $11,000 in payments on the Navigator were

14

made from accounts held jointly by the debtor and Mrs. Hines or from an account owned solely by her. The court further notes that Hines transferred the vehicles to an insider (Hines LLC), he retained the use of the vehicles, he received no consideration for the transfer, the transfer occurred after the arbitrator's award and only days before filing the chapter 7 petition, and he did not disclose the transfers in the bankruptcy schedules.

The court concludes that there is no genuine issue as to any material fact and that the plaintiffs are entitled to a judgment as a matter of law on Count 1 of the complaint under 11 U.S.C. § 727(a)(2). The plaintiffs have shown that the debtor made numerous transfers prepetition. By his own admission, Hines made most of these transfers because of the pending litigation with Marchetti. In considering the indicia of fraud, the overwhelming majority of these transfers were made to an insider for no consideration and under circumstances where Hines retained the benefit and use of the property. In addition, the timing of the transfers indicate that his primary motive was to hinder, delay, or defraud a creditor. Indeed, the chronology leads to the conclusion that this was an orchestrated series of events that occurred over time to divest himself of property for the purpose of defrauding his creditors.

The court is aware that matters where intent is at issue are often not appropriate for disposition via summary judgment. However, where the undisputed facts can lead to no other rational conclusion than that the debtor intended to hinder, delay, or defraud a creditor, there is no purpose in proceeding to trial.

## 11 U.S.C. § 727(a)(2)(B)

The plaintiffs assert that the debtor transferred property of the estate postpetition with the intent to hinder, delay or defraud a creditor. Specifically, the plaintiffs state that Hines sold a home generator for $15,000 which was part of the bankruptcy estate. Hines denies that he ever had an interest in the generator. He states that it was purchased by his wife and that she made the payments using an American Express account over which he had no interest or control. However, the plaintiffs point to records that reflect that the generator was purchased using an American Express credit card which was in the name of Mrs. Hines and PC, and that the debtor was a cardholder. Hines explains that

15

the charge for the generator was disputed with American Express and that when the charge was reinstated, it was reinstated to the wrong account – the joint account of Hines PC and Mrs. Hines.

The court concludes that a genuine issue of material fact exists with regard to the ownership of the generator. The account from which the generator was paid off may not be the account from which the generator was initially purchased. And even if Hines helped to pay for the generator with his separate funds, that within itself does not conclusively establish that his wife did not own the generator. Accordingly, summary judgment is not due to enter on Count 2 of the complaint.

### 11 U.S.C. § 727(a)(3)

Under section 727, a debtor may be denied a discharge if:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C. § 727(a)(3).

> The purpose of this statute is "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir.1999) (citing *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1401 (9th Cir.1990) (quoting *In re Underhill*, 82 F.2d 258, 260 (2nd Cir.1936))). The Trustee and creditors are to receive sufficient information to enable them to "trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions." *In re Scott*, 172 F.3d at 969 (citation omitted). "Creditors are not required to risk the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records." *Id.*

16

*Colonial Bank v. Wynn (In re Wynn)*, 261 B.R. 286, 299 (Bankr. M.D. Ala. 2001). *Id.*

The plaintiffs assert that the debtor altered a credit card statement to make it appear that the generator was purchased on an account held solely by Mrs. Hines. As stated above, the document was heavily redacted, and the name of one of the account debtors had been obliterated. It was not until Marchetti obtained duplicates of that same record from the credit card company that Marchetti discovered that the account belonged not to Mrs. Hines but to Mrs. Hines and Hines PC.

However, in brief, the debtor's counsel appears to take responsibility for the redaction: "[T]he undersigned attorney 'heavily redacted' any communication sent to Plaintiff's counsel to protect the privacy of Mrs. Hines, as it was provided through an informal request, not to misinform Plaintiff and/or other interested parties." Memorandum of Defendant, p. 7 (Doc. #31).

There is a genuine issue regarding who redacted the documents – the debtor or his counsel. The credit card statements were critical evidence on the material fact regarding ownership of the generator. If the debtor, without justification, redacted the documents to conceal the name of the joint account debtor from Marchetti, the court would conclude that his discharge should be denied. However, the identity of the redactor is the subject of genuine dispute. Therefore, summary judgment is not due to enter on Count 3 of the complaint.

## 11 U.S.C. § 727(a)(4)

Under section 727, a debtor may be denied a discharge if:

(4) the debtor knowingly and fraudulently, in or in connection with the case –
   (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). "Deliberate omissions by the debtor may also result in the denial of a discharge." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). "To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230,

17

232 (11th Cir. 1991). "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik*, 748 F.2d at 618.

The plaintiffs assert that Hines has made numerous material false oaths, both by commission and omission, in connection with this chapter 7 bankruptcy case. For instance, the plaintiffs contend that Hines "grossly understated" his income from the operation Hines PC, that he concealed the fact that the AERAS contract was with Hines individually and not Hines PC, that he concealed nearly $100,000 in payments from Hines PC during the year preceding the petition, and that he concealed the transfer of over $60,000 in paychecks and funds in jointly held accounts to accounts owned solely by Mrs. Hines during the year preceding the petition.

In addition, the plaintiffs assert that Hines did not disclose the transfer of the vehicles to Hines LLC, and he falsely testified that the generator was purchased by Mrs. Hines alone, that it was being paid for with her money, and that a balance on the generator was still owing when it was sold.

As stated above, there is a genuine issue of material fact concerning whether the generator was purchased and owned by Mrs. Hines. In addition, the verified materials are sufficient to show that there is a genuine issue of material fact concerning whether some of the other statements are false and further whether Hines made the statements both "knowingly and fraudulently."

Accordingly, summary judgment is not due to enter on Count 4 of the complaint.

## Conclusion

For the reasons stated above, the motion for summary judgment is due to be granted on Count 1 of the complaint, and an order will enter denying the debtor's discharge under 11 U.S.C. § 727(a)(2)(A). The motion for summary is due to be denied as to Counts 2, 3, and 4.

18

An appropriate order will enter separately.

Done this 24th day of September, 2009.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Christopher L. Hawkins, Attorney for Plaintiffs
C. H. Espy, Jr., Attorney for Debtor